UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DWAYNE LEASTON-BROWN,<br><br>Defendant. | Criminal No. 18-10402-RWZ |

## GOVERNMENT'S SENTENCING MEMORANDUM

Just five months after being released from his last federal imprisonment for firearms charges, while on supervised release, the defendant Dwayne Leaston-Brown, a Junior KAOS gang member, pulled a firearm on Kaamal Stewart, a member of a different gang, outside a pizza restaurant on a heavily-traveled sidewalk in Mattapan in broad daylight.  That firearm was recovered after Stewart, and then a Boston Police Department officer, chased Leaston-Brown through Mattapan Square, and the gun ultimately fell onto the sidewalk.  Leaston-Brown has pleaded guilty to being a felon in possession of a firearm.  This is the defendant's third gun conviction.  His conduct posed significant danger posed to the public – including children and other innocent bystanders seen on surveillance video walking by as Leaston-Brown and Stewart ran armed through the streets – and demonstrates the defendant's utter disregard for the law.  Accordingly, to adequately punish the defendant and deter him and others from similar offenses in the future, the government must now ask the Court to sentence Leaston-Brown to 70 months imprisonment – the low end of the Guidelines as calculated by Probation – and 3 years of supervised release.

## BACKGROUND

On November 13, 2014, Leaston-Brown was convicted in the United States District Court for the District of Massachusetts of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1), a crime punishable by a term of imprisonment exceeding one year. PSR ¶ 9. He was sentenced to 46 months imprisonment and 36 months of supervised release. PSR ¶ 10. Leaston-Brown began his 36 months of supervised release on March 30, 2018, and was about five months into his supervised release period when he committed the September 8, 2018, gun offense, to which he pleaded guilty in this case. PSR ¶ 11.

As of September 8, 2018, Leaston-Brown was an identified member of the Junior KAOS gang, and was listed as an "active member" of the Junior KAOS gang in the Boston Regional Intelligence Center's gang database. PSR ¶ 12.

Around 5:30pm on Saturday, September 8, 2018, Boston Police Department Officer Kimber Taylor was monitoring a newly-installed traffic signal on Cummins Highway in the Mattapan Square area in a marked BPD cruiser. PSR ¶ 13. He observed a black male wearing a red and black hoodie, later identified as Leaston-Brown, running up Cummins Highway away from River Street, with his right hand in his hoodie pocket. *Id.* Leaston-Brown continued to look backwards over his left shoulder, and appeared to be in fear. *Id.* As he ran, he ran into a customer exiting the America's Food Basket at 926 Cummings Highway, then ran through the Food Basket parking lot, exiting onto Fairway Street in the direction of Blue Hill Ave. *Id.* Officer Taylor made a U-turn on Cummins Highway and a right onto Fairway Street to follow Leaston-Brown. *Id.*

While Leaston-Brown was running on Fairway Street, Officer Taylor observed a silver item in his right hand, which Officer Taylor believed to be a firearm based on how he was

holding it.  PSR ¶ 14.  Leaston-Brown looked back, saw the police car, and placed the item back into his right pocket.  *Id.*  Officer Taylor activated his blue lights, pulled up next to Leaston-Brown near the Santander Bank, and said, "Yo, can I talk to you?"  *Id.*  Leaston-Brown did not stop, but ran through traffic across Blue Hill Ave., keeping his right hand inside the right pocket of his hoodie.  *Id*.

Officer Taylor turned left onto Blue Hill Ave., where he saw Leaston-Brown stumble and fall to the ground, keeping his right hand in his pocket and bracing his fall with his left hand.  PSR ¶ 15.  Officer Taylor exited his cruiser, said, "Boston Police, stop running," and ran after him.  Leaston-Brown got up and ran through traffic and onto the sidewalk.  *Id.*  As he was running in front of the Santander Bank at 1617 Blue Hill Ave. in Mattapan, he tripped and fell.  *Id.*  When Leaston-Brown fell to the ground, a silver and black firearm fell from his person, landing on the pavement in front of him and to his right.  *Id.*  Officer Taylor got on top of him and tried to prevent him from getting up or reaching for the firearm, but Leaston-Brown continued to struggle with him.  *Id.*

Meanwhile, BPD Det. Leslie Joseph-Greene had been in the area, off-duty, riding in a passenger seat of a private vehicle on Blue Hill Ave. near Santander Bank, when he observed Officer Taylor chasing Leaston-Brown.  PSR ¶ 16.  Based on what he observed, Det. Joseph-Greene believed that Leaston-Brown was armed.  *Id.*  He saw Officer Taylor get on top of Leaston-Brown, and exited the vehicle he was riding in and ran over to see if he could assist.  *Id.*  When he arrived where Officer Taylor and Leaston-Brown were, he saw the firearm on the ground by Leaston-Brown, and saw that Leaston-Brown was still struggling with Officer Taylor and that a crowd was beginning to form.  *Id.*  Det. Joseph-Greene identified himself to Officer Taylor, picked up the gun to secure it, and called for backup using Officer Taylor's radio.  *Id.*

A few minutes later, backup arrived, and Leaston-Brown was transported to BPD District 3 for booking. PSR ¶ 17. On September 10, he was charged in state court with carrying a firearm without a license, second offense, and possession of ammunition without a FID card. *Commonwealth v. Leaston-Brown,* 1807CR003150.

Post-Arrest Investigation

The gun was determined to be a Kahr Arms model CM9, 9mm semi-automatic pistol, with serial number IQ6852. *Id.* It was loaded with a magazine containing six 9mm Luger cartridges. *Id.* Both the firearm and the ammunition were later determined to have been manufactured outside of Massachusetts. *Id.*

After the arrest, one bystander told Officer Taylor that he had observed Leaston-Brown and another black male pulling guns on each other earlier. PSR ¶ 18. Subsequent investigation and review of video surveillance collected after Leaston-Brown's arrest revealed that the second suspect was Kaamal Stewart, a member of the Greenfield gang. *Id.*

Video surveillance shows the initial confrontation between Leaston-Brown and Stewart at the Mattapan House of Pizza, just minutes before Officer Taylor first observed Leaston-Brown. PSR ¶ 19. Video depicts Leaston-Brown's drawing a firearm on Stewart first, Stewart's running back into the Mattapan House of Pizza, Stewart drawing his firearm in response, and Leaston-Brown's then running away with Stewart chasing him. *Id.; see also* Mattapan House of Pizza Video, Ex. 1, at timestamp 17:34:08-17:35:00; Happy Liquors II Video, Ex. 2, at timestamp 5:32:00-5:33:00[1]; Ex. 3 (still image from Happy Liquors II video at 5:32:27, depicting Leaston-

---

[1] A copy of these videos has been produced to the defendant, and will be provided to the Court in advance of the Sentencing Hearing. The parties agree on the videos' admissibility. Leaston-Brown is the individual in the red jacket, and Stewart is the individual in the blue jacket.

Brown with a firearm drawn in his left hand and pointed at Stewart, who is ducking back into Mattapan House of Pizza).

Video surveillance demonstrates that, at the moment Officer Taylor pulled up beside Leaston-Brown near the Santander Bank, and said, "Yo, can I talk to you?" Stewart was directly across Fairway Street from Leaston-Brown. PSR ¶ 19.

On September 24, 2018– over two weeks after Leaston-Brown's arrest and charging – Stewart was arrested and charged in state court with gun charges as well as assault with a dangerous weapon against Leaston-Brown. PSR ¶ 10; Ex. 3 (BPD Incident Report re: Stewart arrest). Leaston-Brown was federally indicted on November 1, 2018, and his state charges were dismissed to the federal indictment.

## DISCUSSION

### I. Sentencing Guideline Calculation

While the U.S. Sentencing Guidelines ("USSG") are advisory and not mandatory, *United States v. Booker,* 543 U.S. 220 (2005), the First Circuit has made clear that "the guidelines still play an important role in the sentencing procedure, so that [ ] a court should ordinarily begin by calculating the applicable guideline range." *United States v. Gilman*, 478 F.3d 440, 445 (1st Cir. 2007).

Based on its computation of Leaston-Brown's total offense level as 21 after a three-level reduction for prompt acceptance of responsibility, and his criminal history category as V, Probation has calculated the GSR in this case to include a term of incarceration from 70 to 87 months, to be followed by a term of supervised release of one to three years. The government concurs with Probation's determination of the GSR, and agrees with its position with respect to the defendant's Objections.

Specifically, with respect to the defendant's Objection No. 2, Probation properly included the 4-level enhancement under USSG § 2K2.1(b)(6)(B) because the defendant possessed the firearm in connection with another felony: the assault of Kaamal Stewart with a dangerous weapon (the firearm). The defendant states that the "reality is that video surveillance footage from a business next to Mattapan House of Pizza (Happy Liquor) equally supports a contention that Mr. Leaston Brown was acting in self defense when he was assaulted with a firearm by Mr. Stewart in front of the pizza restaurant." PSR Objections at 28 (Defense Objections to ¶¶ 19, 25). To the contrary, the video does not demonstrate Stewart assaulting Leaston-Brown with a firearm until *after* Leaston-Brown drew his firearm on Stewart. After Leaston-Brown drew his firearm, Stewart ducked inside the restaurant to avoid getting shot and apparently to retrieve his own weapon; Leaston-Brown then ran away; and then Stewart chased Leaston-Brown. *See* Mattapan House of Pizza Video, Ex. 1, at 17:34:08-17:35:00; Happy Liquors II Video, Ex. 2, at 5:32:00-5:33:00. This sequence of events demonstrates that Leaston-Brown first assaulted Stewart with a dangerous weapon; then he retreated; and then Stewart assaulted Leaston-Brown with a dangerous weapon.

Although the defendant claims he was acting in self-defense after Stewart was arguing in a "threatening tone" and reached for his waistband, the review of the video demonstrates that for most of the interaction Stewart was in fact gesturing with both of his hands in the air, and for most of the interaction Leaston-Brown had his left hand in his pocket (where the firearm was); to the extent touching one's waistband is considered a threatening gesture, Leaston-Brown was the first aggressor there as well. The video clearly demonstrates that Leaston-Brown is the first to draw a weapon (*see* Ex. 2 at timestamp 5:32:27); Stewart appears surprised, ducks back into the restaurant, and adjusts his jacket (presumably retrieving his own firearm) before running after

Leaston-Brown. This is consistent with Leaston-Brown's committing a first assault with a dangerous weapon when he drew a firearm on Stewart, escalating a verbal altercation into a physical one; and then Stewart's committing a second assault with a dangerous weapon when he gave chase rather than retreating. It is not consistent with Leaston-Brown's acting in self-defense. Indeed, had Stewart already been assaulting Leaston-Brown with a firearm when he touched the area of his waistband (*see* Ex. 2 at timestamp 05:32:26), he would not have needed to go inside the House of Pizza in order to retrieve his firearm thereafter. In a hypothetical state court prosecution of Leaston-Brown for assault with a dangerous weapon, the Commonwealth would be able to prove at the very least[2] that Leaston-Brown "did not do everything reasonable in the circumstances to avoid physical combat before resorting to force." Instruction 9.260 of the Criminal Model Jury Instructions for Use in the District Court (3d ed. 2009). He could have walked away rather than escalating the situation by drawing a firearm. That he did not, by itself, is sufficient to defeat the defense of self-defense.

---

[2] The government believes that the evidence also demonstrates that the defendant did not reasonably believe that he was being attacked or immediately about to be attacked, and that he used more force than was reasonably necessary under the circumstances. Any one of these is fatal to a claim of self-defense.

The government does not claim that Leaston-Brown went out looking for a fight on September 8. But when he and Stewart began arguing, he was the first to escalate the argument into a threat of physical harm by brandishing a firearm and pointing it at Stewart. This is sufficient to prove assault with a dangerous weapon. *See Commonwealth v. McDowell,* 90 Mass. App. Ct. 1102 (App. Ct. 2016) ("The conduct of pointing a gun at an individual is sufficient to establish the crime of assault by means of a dangerous weapon, a felony.") (citing G. L. c. 265, § 15B(b); *Commonwealth v. Appleby*, 380 Mass. 296, 305, 402 N.E.2d 1051 (1980) ("[T]he thrust of the offense of assault with a dangerous weapon . . . is the outward demonstration of force which breaches the peace, and therefore even an unloaded gun [known only by the defendant to be unloaded] may be a dangerous weapon in that context")). Premeditation is not an element.

The defendant claims that because Stewart was charged with assault with a dangerous weapon against Leaston-Brown, and Leaston-Brown was not charged with assault with a dangerous weapon against Stewart, that somehow the Boston Police Department and Suffolk County District Attorney's Office view Stewart as the only aggressor. PSR Objections at 29 (Defense Objections to ¶¶ 19, 25). This argument ignores the chronology of the case. Leaston-Brown was arrested on site on September 8, 2018, when an officer saw him running through the streets, made observations giving rise to a reasonable suspicion he was armed with an illegal firearm, and ultimately saw the firearm fall to the sidewalk in plain view. Leaston-Brown was charged that same day with solely the firearm and ammunition charges, which were the only crimes the police had probable cause for at that point in time.

Thereafter Boston Police Department continued its investigation into reports that there was a second suspect with a gun. BPD collected video from local businesses, and it was through that video evidence that Stewart was identified and arrested on September 24, 2018, over two weeks after Leaston-Brown's arrest. *See* Ex. 4 (BPD incident report re: arrest of Stewart). By the time of Stewart's arrest, it was clear from the review of the video that in addition to the firearm offenses, Stewart had committed an assault with a dangerous weapon by chasing Leaston-Brown around Mattapan Square with a firearm. So he was charged with both offenses. Leaston-Brown might have also been charged with the assault with a dangerous weapon had his case stayed in state court; but the federal government "adopted" the gun prosecution of Leaston-Brown, culminating in his indictment November 1, 2018. This sequence of events demonstrates that each defendant was charged by the state with the crimes for which there was probable cause at the time of their arrests – and does not demonstrate that the state took a view that Leaston-Brown had not committed an assault with a dangerous weapon prior to Stewart's committing an

assault with a dangerous weapon.  The two are not mutually exclusive, and the video demonstrates that both occurred.

For all these reasons, Probation's calculation of the GSR was correct.

## II. <u>Application of the Section 3553(a) Factors</u>

The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in § 3553(a)(2).  These factors include the nature and circumstances of the offenses and the history and characteristics of the defendant, and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide for the needs of the defendant.  They also require courts to consider the kinds of sentences available, and the GSR.  In this case, these factors point to a sentence of imprisonment of 70 months, and to three years of supervised release.

### A. <u>Nature and Circumstances of the Offense; Need for Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment and Deterrence, and Protect the Public</u>

In analyzing the "nature and circumstances of the offense" in this case, the Court should consider the circumstances of the defendant's arrest.  He was armed with a loaded handgun in his jacket as he ran through sidewalks and streets in a busy, heavily populated area of Boston.  He pulled the firearm out and pointed it at another individual on a busy sidewalk.  Surveillance video demonstrates heavy traffic on the streets, children and their parents crossing the streets, and bystanders nearly getting in the middle of Leaston-Brown and Stewart as they drew firearms on each other.

One need look no further than the daily newspaper to see the danger that illegal firearms pose in the streets of Boston. In 2020, there were 276 shooting victims in Boston. *See* BPD Crime Data, https://static1.squarespace.com/static/5086f19ce4b0ad16ff15598d/t/5ff37b7f0e058f15c9d98ef2/1609792383700/Shootins+Weekly+Crime+Overview_+2020+Year+End+4.pdf (last accessed Jan. 25, 2021).

Against this backdrop, it is important to send a message that gun crime cannot be tolerated, particularly from people who have already been convicted of such crimes before. *See United States v. Laury*, 985 F.2d 1293, 1310 (5th Cir. 1993) (repeated convictions displayed tendency towards recidivism that warranted more serious sentence); *United States v. Smith*, 505 F.3d 463, 470 (6th Cir. 2007) (imposing above guidelines sentence where it was obvious that prior incarceration "was obviously not sufficient to comply with the purposes of § 3553(a)(2)").

A 70-month sentence of imprisonment, followed by three years of supervised release, is sufficient, but not greater than necessary, to reflect the serious circumstances of this offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, and protect the public from further crimes of the defendant. This sentence would represent a 24-month increase from his last sentence for the same crime – a substantial, but reasonable, increase.

### B. The History and Characteristics of the Defendant

The government acknowledges certain points that are reflected in the PSR. The defendant had a difficult childhood, being raised by his aunt and uncle rather than his biological parents due to their substance abuse issues and sometimes violent and abusive behavior, and also spending time in foster care and homeless shelters. PSR ¶ 49. He has a history of substance abuse. PSR ¶¶ 68-72. And, as defense counsel addresses in his memorandum, Leaston-Brown has experienced some mental health issues, although he was not interested in mental health

10

treatment when previously on release, PSR ¶ 62, nor at the time of his pre-sentence interview. PSR ¶¶ 61-63.

However, the government's recommendation must also consider other, less sympathetic personal characteristics. Leaston-Brown's adult record reflects numerous serious crimes, and an unwillingness to follow the law even while on supervision. At age 19, he was convicted of firearms offenses arising out of an incident in which two groups engaged in a gun battle in the middle of the day on Fremont Street in Mattapan (the area associated with the KOZ/KAOS gang, not far from the location of the 2018 incident). *See* PSR ¶ 38. While on probation for that offense (after serving 2.5 years in prison), Leaston-Brown was arrested and later convicted of drug distribution offenses after another shootout, this one taking place in Worcester and resulting in the defendant himself being shot. PSR ¶ 39. Leaston-Brown received 27 months for this offense, which resulted in his being released on March 7, 2014. Less than 90 days later, he was arrested again with a gun – on that occasion, Leaston-Brown and his co-defendant Christopher Henry (who was also armed) were in the area of the Boston Bridge School to disrupt a memorial service being conducted for the member of a rival gang who had been killed three years before; as he fled from the police, Leaston Brown dumped his gun in the slot of a dumpster on school property. PSR ¶ 40. He was arrested, and the federal government adopted that case, charging him with a violation of 18 U.S.C. § 922(g)(1). He pleaded guilty and was sentenced to 46 months in that case. PSR ¶ 10. He promised Judge Stearns that he had changed, and the judge would not see him again in his courtroom. *United States v. Leaston-Brown,* 14-10315-RGS, Dkt. No. 50 (Transcript of Sentencing Hearing) at 14. Then, just five months after his release from incarceration, while on federal supervised release, he committed another gun offense, the instant offense. PSR ¶ 11. *See United States v. Schmude*, 901 F.2d 555, 559 (7th Cir. 1990)

("[r]ationally, if a defendant has been convicted for the same offense more than once, he has demonstrated the need for greater sanctions to deter him from committing that same crime again- greater sanctions than might be required for a defendant who has never been convicted of a similar offense.").

Altogether, the history and characteristics of the defendant do not justify a sentence outside the GSR, but rather point to a sentence at the low end of the GSR. The issues raised in the defendant's memorandum demonstrate the need for mental health evaluation and treatment to be incorporated as conditions of his supervised release.

## CONCLUSION

A sentence of 70 months incarceration, along with 3 years of supervised release, is necessary in this case to reflect the seriousness of the offense of conviction, to promote respect for the law, to adequately punish Leaston-Brown for his criminal conduct, to deter him and others from offending in the same way again, and to protect the public.

For the foregoing reasons, and those to be articulated at the sentencing hearing, the government respectfully recommends that this Court impose a sentence of 70 months imprisonment, to be followed by a three-year term of supervised release, as well as the required special assessment. Such a sentence would be sufficient, but not greater than necessary, to reflect the seriousness of the offense and the goals of sentencing.

        Respectfully submitted,

        ANDREW E. LELLING
        United States Attorney

        */s/ Elianna J. Nuzum*
        Elianna J. Nuzum
        Assistant United States Attorney
        John Joseph Moakley U.S. Courthouse
        One Courthouse Way, Suite 9200
        Boston, MA 02210
        elianna.nuzum@usdoj.gov
        617.748.3100

Dated: January 26, 2021

## CERTIFICATE OF SERVICE

    Undersigned counsel certifies that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

        */s/ Elianna J. Nuzum*
        Elianna J. Nuzum
        Assistant United States Attorney

Dated: January 26, 2021